UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ROBERTO VELEZ, ZACHARIE PORCENAT, JAIME GARCIA, NADINE KING, DEBRA KING, JAMES EARL EBRON, MATIAS CABRERA, DAVID PEARSON, LUIS ALICEA, JOSE LOGAN, KENNETH THOMAS, DWAYNE CLARK, JUAN COBA, and WILLIAM CRESPO, *Plaintiffs*, *v.* NEW HAVEN BUS SERVICE, Inc., DANIEL MILEY, and YALE UNIVERSITY, *Defendants*. | Civil No. 3:13cv19 (JBA) January 6, 2015 |
|---|---|

**RULING GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION**

Plaintiffs Roberto Velez, Zacharie Porcenat, Jaime Garcia, Nadine King, James Earl Ebron, Matias Cabrera, David Pearson, Luis Alicea, Jose Logan, Kenneth Thomas, Dwayne Clark, Juan Coba, and William Crespo[1] bring this action against Defendants New Haven Bus Service, Inc ("NHBS"), Daniel Miley, and Yale University ("Yale") alleging that Defendants failed to pay them overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 (Count One) and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-72 (Count Two), and that Defendants failed to pay them all of the wages that they were owed, as required by Conn. Gen. Stat. § 31-

---

[1] Debra King was initially a plaintiff in this action, but she voluntarily withdrew all of her claims against Defendants. (*See* Mot. to Dismiss [Doc. # 92].)

71b, *et seq.* (Count Three). (*See* 2d Am. Compl. [Doc. # 53].)[2] Defendant Yale moved [Doc. # 56] for summary judgment in December 2013, arguing that Plaintiffs failed to establish that Yale was their joint employer within the meaning of the FLSA and the CMWA, and that Plaintiffs' claims are barred by the motor carrier exemption and the statute of limitations.

The Court granted [Doc. # 98] Defendant's Motion for Summary Judgment, finding "as a matter of law that Yale did not employ Plaintiffs within the meaning of the FLSA." (Ruling at 19.) In so deciding, the Court relied on the six-factor test in *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003). Plaintiffs now move [Doc. # 100] for reconsideration of the Court's decision on the basis that the Court misapplied those factors by "misread[ing] the evidence" and "fail[ing] to draw reasonable inferences in the plaintiffs' favor." (Mot. for Recons. [Doc. # 100] at 4, 6.) For the reasons that follow, Plaintiffs' motion is granted, and upon reconsideration, Yale's motion [Doc. # 56] for summary judgment is granted in part and denied in part.

---

[2] On July 29, 2014, the parties filed a stipulation of dismissal [Doc. # 95] with respect to the claims against Defendants NHBS and Miley, and therefore, only Plaintiffs' claims against Yale remain pending in this suit.

II.     Discussion[3]

Familiarity with the factual background of this case is assumed from the detailed account of the facts in the Ruling [Doc. #98] Granting Summary Judgment.

A. **Joint Employment**

As discussed by the Court in its Ruling, the Second Circuit has recognized two tests for determining whether a joint employer relationship exists based on formal control or functional control. The first, announced in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), focuses on the extent to which the putative employer exercises *formal* control over a plaintiff's employment. The test examines whether an employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Id.* at 12. Plaintiffs conceded that they could not prevail against Yale under this test.

---

[3] Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)1. The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

The second test, articulated by the Second Circuit in *Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003), considers the extent to which a putative employer has *functional* control over a plaintiff's employment. In applying *Zheng*, a court may consider the following factors:

> (1) [W]hether [the putative employer's] premises and equipment were used for the plaintiffs' work; (2) whether [the direct employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the putative employer's] process of production; (4) whether responsibility under the contracts [between the direct and putative employers] could pass from one [entity] to another without material changes; (5) the degree to which the [putative employers or its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominately for the [putative employer].

*Id.* at 72. The Court's Ruling focused on these factors but Plaintiffs contend that the Court should reconsider its analysis of the first, third, and fourth *Zheng* factors, as they believe the Court's prior analysis was clearly erroneous and manifestly unjust. (*Id.* at 4–10.)

### 1. Factor One: Whether the putative employer's premises and equipment were used for the plaintiffs' work

The Court held that the first "factor neither weighs for nor against a finding that Yale was a joint employer." (Ruling at 16.) In reaching this conclusion, the Court made the following findings:

> Based on the record before the Court, it appears that Plaintiffs used both Yale and NHBS premises and equipment in the course of their employment. Yale and NHBS both owned a portion of the shuttle fleet.

4

> NHBS stored the vehicles and managed the shuttle service from its own property, but Plaintiffs used Yale-owned dispatching systems to navigate their routes, which covered the Yale campus and other areas in New Haven.

(*Id.*)  The first part of this finding came from Donald Relihan who stated: "New Haven Bus Service, Inc. also owned and supplied some of the *vehicles* used on routes required by Yale."  (Relihan Aff. ¶ 8 (emphasis added).)  Plaintiffs contend however that there is no basis in the record for the Court's finding that NHBS owned a portion of the shuttle fleet.  (Mot. for Recons. at 5.)

According to Plaintiffs, when Mr. Relihan discussed the shuttle buses elsewhere in his affidavit, he used the words "shuttle buses," and the Court was wrong to conclude that Mr. Relihan intended "vehicles" to include shuttles.  (*Id.*)  The relevance of this distinction between "vehicles" and "shuttle buses" is presumably that Plaintiffs' jobs primarily consisted of driving shuttle buses, and thus the equipment they primarily used were the shuttles, not the charter vehicles.  However, Plaintiffs' analysis is too searching, and the Court's conclusion that Plaintiffs used the premises and equipment of both NHBS and Yale does not warrant reconsideration.  Nonetheless, for the reasons that follow, the Court finds that upon reconsideration, it misapplied this *Zheng* factor and that the first factor could reasonably favor Plaintiffs.

The error in the initial Ruling was in treating joint employment as an either/or proposition, when in fact the legal question before the Court was "not whether Plaintiffs were *more* dependent upon" Yale or NHBS, *Torres-Lopez v. May*, 111 F.3d 633, 641 (9th Cir. 1997) (emphasis original), but whether Plaintiffs were *partly* dependent upon Yale.

5

As the Second Circuit has explained, the first factor "is relevant because the shared use of premises and equipment may support the inference that a putative joint employer has functional control over the plaintiffs' work." *Zheng*, 355 F.3d. at 72; s*ee also Lopez v. Silverman*, 14 F. Supp. 2d 405, 417 (S.D.N.Y. 1998) ("[W]hether the [putative] joint employer's premises and equipment were used for the work is plainly a significant indicator of the workers' economic dependence on the putative joint employer.").[4]

It is apparent that the owner of the buses in which the drivers perform their duties exercises some functional control over the drivers, particularly if the owner of the buses also owns and manages the GPS and dispatch systems installed on the buses.[5] There does

---

[4] In the context of farmworkers, the Ninth Circuit explained:
A grower's ownership of farmland is relevant for the obvious reason that without the land, the worker might not have work, and because a business that owns or controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to labor contractors.  Similarly, the grower's investment in equipment and facilities is probative of the workers' economic dependence on the person who supplies the equipment or facilities.

*Torres-Lopez*, 111 F.3d at 640–41 (internal quotation marks and citations omitted) (citing *Antenor v. D & S Farms*, 88 F.3d 925, 937 (11th Cir. 1996)).

[5] It is less clear how important the ownership of the lot in which the buses are stored when they are not in use is to the question of functional control.  There is little in the record regarding the activities that took place at the lot.  Mr. Relihan states: "The vehicles . . . were housed at premises owned by New Haven Bus Service, Inc. reported to, and began driving their Yale University shuttle bus routes from, [sic] the premises owned by New Haven Bus Service, Inc.  They also delivered the buses to the premises of New Haven Bus Service, Inc. at the conclusion of their routes."  (Relihan Aff ¶ 9.)  The only other reference to the lot in the record is in the NHBS manual.  (Ex. H to NHBS's Loc. R. 56(a)1 Stmt. at 9.)  The manual mandates that drivers arrive at "the Yard" 15 minutes prior to departure time in order to "[p]ick up [their] next days work, schedule changes or
*(Continued on next page)*

not appear to be any dispute that the shuttle buses driven by at least some of the Plaintiffs[6] were owned by Yale.[7] On this record, and in recognition of the fact that joint employment is not an either/or proposition, upon reconsideration, the Court finds that the first *Zheng* factor could weigh in favor of finding a joint employer relationship.

2. **Factor Three: The extent to which the plaintiffs performed a discrete line-job that was integral to the putative employer's process of production**

In holding that the third factor weighs against finding a joint employment relationship, the Court previously found:

> Yale is clearly primarily an institute of higher education and not a provider of transportation. Although the shuttle service may make Yale a more attractive place to work and study, Yale would not cease operations if the shuttle service went defunct. Thus, Yale's shuttle service is not integral to its larger mission of educating students.

(Ruling at 17.) Plaintiffs now contend that in so finding, the Court relied "upon an excessively narrow interpretation of this factor," as illustrated by *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184 (S.D.N.Y. 2003). (Mot. for Recons. at 7.) There, the court held that Duane Reade was a joint employer of delivery persons who were paid to deliver pharmacy items to customers' homes. *Id.* at 195–96. As part of its analysis, the

---

messages," verify time sheets, and conduct a pre-trip inspection of the bus. *Id.* In addition, at the end of the day, drivers are to return to the Yard to conduct a post-trip inspection, complete time sheets, and "[c]ool the engine down for 3 to 5 minutes." *Id.*

[6] Neither party has submitted evidence regarding the specific duties of Plaintiffs Coba, Crespo, Nadine King, Logan, or Velez.

[7] Yale contends that NHBS owned some of the vehicles driven by NHBS drivers, but it does not dispute that it owned the buses driven by Plaintiffs. *See id.* ¶ 8.

7

court found that "the delivery workers assigned to Duane Reade performed an integral service for the stores in which they worked, enabling Duane Reade to compete more effectively with mail order fulfillment companies and other drug stores by offering drug deliveries to its customers." *Id.* at 195.

Plaintiff asserts that *Ansoumana* is analogous to the case at bar but the Court disagrees.[8] Duane Reade is in the business of selling pharmaceutical items. Offering consumers the option to have those items delivered to them directly furthers Duane Reade's core mission of selling goods. By contrast, Yale is an educational institution. Providing bus service is a convenience for students and faculty but it is by no means integral to Yale's core mission of educating students. The Court declines to reconsider its conclusion as to this factor.

### 3. Factor Four: Whether responsibility under the contracts between the direct and putative employers could pass from one entity to another without material changes

The Court previously found that the fourth factor weighs against finding that Yale is a joint employer. The challenged conclusion in the Ruling was based on several facts:

> First Transit . . . chose not to hire one-third of NHBS's employees, including the majority of the plaintiffs in this action, and those individuals are no longer Yale shuttle bus drivers as a result of the change in contractors. . . . Furthermore, Plaintiffs have offered no evidence to counter Yale's contention that it played no role in First Transit's decision

---

[8] The Court also notes that Rule 7 requires the movant to set forth "controlling decisions which [the movant] believes the Court overlooked in the initial decision or order," D. Conn. L. Civ. R. 7(c)1, and the Southern District of New York's decision in *Ansoumana* is not controlling here.

> to hire the former NHBS employees, and that the continued employment of these individuals as shuttle drivers was not a requirement of First Transit's contract with Yale.

(Ruling at 17–18.) From the quoted passage, it is evident that the Court made two errors of law. First, for purposes of this factor, focusing on the fate of the individual Plaintiffs was too narrow and misapplied this factor. Second, emphasis on formal control factors such as whether Yale directed or contractually required First Transit to hire the NHBS employees utilizes a *Carter* perspective rather than a *Zheng* perspective. *See Lin v. Great Rose Fashion, Inc.*, No. 08-CV-4778 (NGG) (RLM), 2009 WL 1544749, at *15 (E.D.N.Y. June 3, 2009) ("Under the theory of functional control, 'an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them.'" (quoting *Zheng*, 355 F.3d at 70)).

This fourth factor is intended to get at whether the plaintiffs are "tied to [a putative employer] rather than to an ostensible direct employer." *Zheng*, 355 F.3d at 74. The factor will favor finding a joint employment relationship if "the *same* employees [c]ould continue to do the *same* work in the *same* place." *Id.* (emphases in original). In other words, the "factor is satisfied if the [direct employers] are truly fungible." *Grenawalt v. AT & T Mobility, LLC*, 937 F. Supp. 2d 438, 453 (S.D.N.Y. 2013) (internal quotation marks omitted) (citing *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 135 (S.D.N.Y. 2011)).

Thus, in *Barfield v. New York City Health & Hospitals Corp.*, the Second Circuit held that the fourth factor favored finding that a nurse referral agency and hospital were joint employers of a nurse where the plaintiff's "work responsibilities at [the hospital's

9

premises] remained the same regardless of which agency referred her for a particular assignment." 537 F.3d 132, 136 (2d Cir. 2008); *see also Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 285–86 (E.D.N.Y. 2005) (concluding that the fourth factor favored a finding of joint employment where the plaintiffs moved from one direct employer to another in order to work on a putative employer's orders); *Lopez v. Silverman*, 14 F. Supp. 2d 405, 422 (S.D.N.Y. 1998) (holding that the fourth factor was satisfied where the plaintiffs' relationship with the putative employer did not materially change when their direct employer changed).

Here, a reasonable factfinder could find that responsibility under Yale and NHBS's contract *could* pass from NHBS to another entity without material changes. Indeed, it appears that NHBS's contract with Yale *did* pass to First Transit without material changes. The majority of NHBS drivers went on to drive for First Transit (Relihan Aff. ¶ 12), and Mr. Garcia's undisputed testimony is that after the switch from NHBS to First Transit, employees' "duties, . . . vehicle[s] . . . , and hours of work did not change" (Garcia Aff. ¶ 9). Although the record does not reveal why one-third of NHBS employees were not hired by First Transit, a reasonable factfinder could find that they *could have been* hired without material changes to the contract, and that is sufficient to satisfy this factor.

### 4. Totality of Circumstances

The Second Circuit has exhorted courts not to focus so heavily on the specific factors outlined in *Carter* and *Zheng* lest they ignore the totality of the circumstances. *See Zheng*, 355 F.3d at 75–76 ("[T]he 'economic reality' test—which has been distilled into a

10

nonexclusive and overlapping set of factors—gives content to the broad . . . language in the [FLSA]."); *see also Torres-Lopez*, 111 F.3d at 650 (Aldisert, J., dissenting) ("[T]he determination [of joint employment] cannot be 'on the numbers' by the quantity of [factors]; the outcome must depend, as in any analogical analysis, on the relevancy to the totality of circumstances"). Reviewing all of the evidence before the Court in light of the relevant precedent, and remaining mindful of the procedural posture of this case, the Court reconsiders its prior Ruling granting summary judgment and on reconsideration concludes that summary judgment is not appropriate here.

Under the FLSA, a worker may be employed by multiple entities at the same time. 29 C.F.R. § 791.2(b). Thus, in applying the functional control test, "[t]he issue is not whether a [worker] is *more* dependent upon the [putative employer] or the [direct employer]." *Torres-Lopez*, 111 F.3d at 641 (emphasis in original). "Rather, the inquiry must focus on the economic reality of the particular relationship between the [worker] and the alleged joint employer." *Id.* "'Because of the fact-intensive character'" of this analysis, "the Second Circuit has recognized [that] the determination of joint employer status is rarely appropriate to make at the summary judgment stage." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 941 (S.D.N.Y. 2013) (quoting *Barfield*, 557 F.3d at 143–44).

It is undisputed that Plaintiffs performed the vast majority of their work in shuttle buses and vans prominently stamped with the words "Property of Yale University," wearing uniforms that included a "Yale University Parking & Transit Services" patch. It is undisputed that Yale owned the buses driven by at least some of the plaintiffs, but the

11

record is silent as to what proportion of the buses operated by NHBS drivers were owned by Yale. As Yale was the moving party on summary judgment, it was required to carry the burden of demonstrating that it was entitled to judgment as a matter of law. Its failure to submit proof of its ownership or lack thereof of the buses must therefore be construed against it. This is not insignificant. If NHBS owned a large proportion of the buses, its employees are less likely to have been economically dependent on Yale. If, on the other hand, NHBS owned only a few charter buses and few or no shuttle buses, employees (particularly those who, like Plaintiffs worked exclusively or almost exclusively for Yale) are more likely to have been economically dependent on Yale.

It is clear that Yale was not directly and formally involved in hiring, firing, assigning work to, paying, or disciplining NHBS employees. However, there is evidence that Yale may have exerted indirect control over some of these tasks. "The Second Circuit has . . . recognized that a company can *de facto* set employees' wages and dictate the terms and conditions of their employment, though they do not literally pay the workers, where those employees perform work exclusively in service of that company." *Lin*, 2009 WL 1544749, at *15 (internal quotation marks and alterations omitted) (citing *Zheng*, 355 F.3d at 72). This is a critical point, given the undisputed facts in this case that: (1) the Plaintiffs worked almost exclusively for Yale and (2) "Yale has been the largest customer of NHBS," such that by 2010, Yale shuttle bus service comprised "approximately 70% of NHBS revenue." (Miley Aff. ¶¶ 17, 19.) *See Lin*, 2009 WL 1544749 at *15 ("Plaintiffs functionally worked for [the putative employer], because they worked in a Factory [sic] that manufactured garments exclusively for [the putative employer].").

12

The Ninth Circuit has also recognized the significance of indirect control. The workers in *Torres-Lopez* were hired by a company called Ag-Labor to harvest cucumbers for Bear Creek Farms. 111 F.3d at 637. Like Yale, Bear Creek Farms played no formal role in hiring, firing, or assigning workers shifts. *Id.* at 642. Nonetheless the Ninth Circuit held that "Bear Creek Farms in fact exercised significant control over the farmworkers' working conditions," leading the court to conclude that it was, as a matter of law, a joint employer. *Id.* at 642–45. The court reasoned that Bear Creek Farms exerted indirect control over hiring, firing, and work assignments by "control[ing] the overall harvest schedule and the number of workers needed for harvesting." *Id.* at 642. In the same fashion, in the instant case, Yale may have exerted control over hiring, firing, and work assignments of bus drivers by setting the bus routes, schedules, and stops, by buying, installing, and training the drivers in how to use the GPS dispatch system, and by determining the number of buses to utilize at any one time. There is additionally a genuine question of material fact as to the nature of the Yale dispatchers' authority and role in supervising Plaintiffs. (Ruling at 18.)

Finally, in assessing the economic realities and the level of Plaintiffs' economic dependence on Yale, it is noteworthy that when NHBS lost the Yale contract, all but fifteen of NHBS's drivers, including every plaintiff who still worked for NHBS at that time, were laid off, and by 2013, NHBS had gone out of business. (Miley Aff. ¶ 38–39.) A reasonable factfinder could conclude under such circumstances that Plaintiffs were economically dependent on Yale. Thus, although none of the indicia of formal control

13

recognized in *Carter* are present here,[9] and two of the six *Zheng* factors weigh against a finding of joint employment, when the totality of circumstances is considered, the record does contain sufficient evidence of functional control to support the finding of a joint employment relationship.  Defendant's motion for summary judgment as to Yale's status as a joint employer is therefore denied.

### B. Motor Vehicles Carrier Exemption

Because the Court previously dismissed this case on the ground that Yale could not be found to be a joint employer, it never reached the remaining legal issues—the applicability of the motor vehicles carrier exemption to NHBS and the appropriate statute of limitations under the FLSA.  It addresses these issues now.[10]

Yale argues that even if it is a joint employer within the meaning of the FLSA, Plaintiffs are exempt from that statute's overtime protections pursuant to the motor

---

[9] The Second Circuit has been clear that functional control may exist "even in the absence of the formal control measured by the *Carter* factors." *Zheng*, 355 F. 3d at 72; *see also id.* ("*Carter* thus stands solely for the proposition that the [*Carter* factors] can be *sufficient* to establish employer status.  *Carter* did not hold, nor could it have held in light of *Rutherford*, that those factors are *necessary* to establish an employment relationship." (emphasis in original)).

[10] Yale incorporates by reference NHBS/Miley's arguments in their Cross Motion for Summary Judgment with respect to the motor carrier exemption and the statute of limitations.  (Mem. Supp. Yale Mot. Summ. J. at 20.)  Similarly, Plaintiffs incorporate by reference their arguments in opposition to NHBS/Miley's Cross Motion for Summary Judgment with respect to the motor carrier exemption and the statute of limitations.  (Pls.' Opp'n Yale Mot. Summ. J. at 17.)

carrier exemption,[11] which states that the overtime provision in 29 U.S.C. § 207[12] "shall not apply . . . to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service [under the Motor Carrier Act]."  29 U.S.C. § 213(b)(1).  The Motor Carrier Act in turn gives the Secretary jurisdiction over motor carriers[13] and their employees to the extent that they "engage in activities of a character directly affecting the safety of operation of motor vehicles" across state or international lines.  29 C.F.R. § 782.2(a); see 49 U.S.C. § 13501.  "The jurisdiction of the Secretary of Transportation . . . relates to safety of operation of motor vehicles only, and to the safety of operation of such vehicles on the highways of the country, and that alone."  29 C.F.R. § 782.2(e) (internal quotations marks omitted).

The motor carrier exemption, created in order to minimize incentives for employees to seek more than forty hours a week of interstate driving (which was considered a hazard on public highways), *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 657 (1947); see *Morris v. McComb*, 332 U.S. 422, 434 (1947), is to be narrowly construed, *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).  An employer seeking application of the exemption must prove that it is a "motor carrier" as defined by statute and that

---

[11] The parties have stipulated that under Connecticut law, "the state exemption for drivers engaged in interstate commerce parallels the FLSA's Motor Carrier Act exemption." (Pls.' Opp'n NHBS/Miley Mot. Summ. J. [Doc. # 75] at 30; Mem. Supp. NHBS/Miley Cross-Mot. Summ. J. [Doc. # 57] at 30).)
[12] This section mandates that "[e]xcept as otherwise provided" employers must pay their employees at a rate not less than one and one-half times the regular rate at which they are employed for any workweek longer than forty hours.
[13] Defined as: "A person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14).

"interstate travel constitutes a 'natural, integral and . . . inseparable part' of the employees' duties, such that any employee is likely to be called on to perform interstate travel." *Dauphin v. Chestnut Ridge Transportation, Inc.*, 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008) (quoting *Morris*, 332 U.S. at 433).

The Supreme Court has held that in conducting this inquiry, courts should focus on "the character of the activities rather than the proportion of either the employee's time or his activities." *Morris*, 332 U.S. at 431. "[D]etermining the 'character' of interstate driving involves a fact-specific analysis, including an examination of the method by which the employer assigns the interstate activity to the pertinent class of employees, the nature of the employer's business, and perhaps to a lesser degree, the proportion of interstate-to-intrastate employee activity." *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488 (MBM), 2005 WL 2000133, at *9 (S.D.N.Y. Aug. 17, 2005).

Plaintiffs do not dispute that NHBS is a motor carrier within the meaning of the Motor Carrier Act. (*See* Pls.' Opp'n to NHBS/Miley Mot. Summ. J. at 8.) Rather, they argue that their activities as Yale shuttle drivers do not involve interstate transportation of passengers in a way that would bring them within the scope of the motor carrier exemption. (*Id.*) Neither party has submitted evidence regarding the specific duties of Plaintiffs Coba, Crespo, Nadine King, Logan, or Velez, and thus the required fact-specific analysis cannot be performed to determine whether the undisputed facts show that the exemption applies to those individuals. Of the remaining plaintiffs, all report that when they were hired, they were not told they would have to drive out of state, and the only two who ever travelled out of state during their employment with NHBS did so on only one or

16

two occasions. (*See* Alicea Aff. ¶ 13; Clark Aff. ¶ 7.) Moreover, by NHBS's own admission, interstate charter work comprised just 1% of NHBS's business in 2010 and 1.5% in 2011. (Miley Aff. ¶¶ 25, 26.)

Yale relies on NHBS's claim that all of its CDL drivers were members of a pool who could have been called upon to drive out-of-state charter assignments as a part of their ordinary work (*see* Miley Aff. ¶ 16), but each of the eight plaintiffs who submitted affidavits averred that their ordinary work consisted of driving shuttles, vans, and in-state charter buses, and that under company policy, they were free to turn down out-of-state assignments without repercussions. There are therefore, several outstanding and substantial questions of material fact, and on this record, the Court cannot conclude that interstate driving "was a regular or expected part of drivers' duties," as opposed to an "optional [task,] distinct from their core duties performing regular runs." *Dauphin*, 544 F. Supp. 2d at 276.

Yale's alternative argument, that the motor carrier exemption applies based on a theory of continuation of interstate travel (Mem. Supp. NHBS/Miley Cross-Mot. Summ. J. at 28–30), is unavailing. The Eleventh Circuit has recognized that "purely intrastate transportation can constitute part of interstate commerce if it is part of a continuous stream of interstate travel." *Walters v. American Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1229 (11th Cir. 2010) (internal citations and quotation marks omitted). In *Walters*, the plaintiffs mainly drove shuttles for Royal Caribbean Cruises, transporting passengers between the airport and the seaport. The court concluded that because the plaintiffs drove one intrastate leg of a continuous interstate journey, the motor carrier exemption

17

applied. *Id.* at 1230 ("For cruise ship passengers arriving at the airport or seaport, ACLM's shuttle rides would be part of the continuous stream of interstate travel that is their cruise vacation.")

Here, Yale argues that because some of the shuttle routes included stops at the New Haven train station and bus depot that these routes were part of a continuous interstate journey. (Mem. Supp. NHBS/Miley Cross-Mot. Summ. J. at 29.) However, as Plaintiffs argue, Yale has not established that each individual plaintiff drove to these destinations or that assignments to these destinations were part of drivers' ordinary duties. Furthermore, even if Yale had established that every plaintiff regularly drove to the train station or bus depot, it has not demonstrated that the passengers who got off at those stops were traveling interstate. Unlike the cruise ships in the *Walters* case which were necessarily bound for out-of-state destinations, the trains and buses the shuttle passengers boarded could have been headed for destinations within Connecticut. Yale has not therefore established as a matter of law that it is entitled to claim the motor carrier exemption on a continuation of interstate travel theory. Because there are genuine issues of material fact regarding whether the motor carrier exemption applies to Plaintiffs, summary judgment is not appropriate.

C.  **Statute of Limitations**

Finally, Yale argues that the majority of Plaintiffs' claims are barred by the statute of limitations. (Mem. Supp. NHBS/Miley Cross-Mot. Summ. J. at 31–34.) The FLSA

provides for a two-year statute of limitations,[14] except in cases of willful violations, for which the statute of limitations is extended to three years. 29 U.S.C. § 255. Yale argues that there is no evidence in the record that would sustain a finding of willfulness, and that therefore the two-year statute of limitations should be applied in this case. If the two-year statute of limitations were to be applied, only Plaintiffs' overtime claims accruing on or after January 5, 2011 would be cognizable, and as a result, Plaintiff Logan's claims would be barred entirely, as he left employment with NHBS in August 2010 (2d Am. Comp. ¶ 23.)

"An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "'Recklessness is defined as[,] at the least, an extreme departure from the standards of ordinary care[,] to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *McLean v. Garage Management Corp.*, No. 10 Civ. 3950 (DLC), 2012 WL 1358739, at *7 (S.D.N.Y. Apr. 19, 2012) (quoting *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)). "The burden is on the employee to show willfulness." *Young*, 586 F.2d at 207.

---

[14] The Connecticut wage and hour law also has a two year statute of limitations. C.G.S. § 52-596.

Both parties focus their arguments on the effect of the US DOL's and CT DOL's investigations of NHBS on the willfulness analysis. (*See* Mem. Supp. NHBS/Miley Cross-Mot. Summ. J. at 33; Pls.' Opp'n NHBS/Miley Mot. Summ. J. at 30.) However, because NHBS is no longer a party to this action, and Plaintiffs have cited no evidence tending to show that Yale acted willfully, the two-year statute of limitations applies to Plaintiffs' claims. Thus, Plaintiffs may only pursue claims accruing between January 5, 2011 and June 30, 2011.

### III.   Conclusion

For the foregoing reasons, Plaintiffs' Motion [Doc. # 100] for Reconsideration is GRANTED, and on reconsideration, Defendant's Motion [Doc. # 56] for Summary Judgment is DENIED in part (as to the issues of joint employment and the motor carrier exception) and GRANTED in part (as to Plaintiff Logan on the statute of limitations). Plaintiff Logan is dismissed from the suit as his claims are outside the statute of limitations. Previously entered Judgment [Doc. # 99] is VACATED. The Clerk is directed to reopen this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of January, 2015.